UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIMMIE MARTIN BROWN,

                        No. 07-14673

        Plaintiff,             District Judge Avern Cohn

v.                         Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____ /

## REPORT AND RECOMMENDATION

Plaintiff Climmie Martin-Brown brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED, remanding this case to the administrative level for further fact-finding and analysis.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") on September 23, 2003, alleging a disability onset date of July 3, 2003 (Tr. 47). Upon denial of her claim, Plaintiff

requested an administrative hearing, held on April 25, 2006 in Lansing, Michigan (Tr. 394). Administrative Law Judge ("ALJ") B. Lloyd Blair presided (Tr. 394). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Sandra Steele (Tr. 399-417, 417-423). On December 23, 2006, ALJ Blair issued a non-disability finding, determining that although Plaintiff was unable to return to her past relevant work, she could perform a significant number of exertionally light jobs (Tr. 24). On August 29, 2007, the Appeals Council denied review (Tr. 5-7). Plaintiff filed suit in this Court on October 31, 2007.

## BACKGROUND FACTS

Plaintiff, 39 at the time of the administrative decision, received a GED and worked previously as an office assistant, custodian, and mail clerk (Tr. 62, 67). She alleges disability as a result of diabetes, back problems, asthma, and arthritis (Tr. 90).

### A. Plaintiff's Testimony

Plaintiff, a resident of Lansing, testified that she stood 5' 5" and weighed 236 pounds (Tr. 399). She reported that in addition to a GED, she had received a certificate in accounting (Tr. 400). Plaintiff indicated that she currently held a driver's license and continued to drive (Tr. 399-400). She testified that she lived in a single family home with her two children, ages 15 and 16, noting that she and her husband had separated two months prior to the hearing (Tr. 408, 411).

Plaintiff reported that her most recent job, a position at Quality Dairy, required her to stand most of the day and lift up to 50 pounds (Tr. 400). She testified that prior to her three-

year stint at Quality Dairy, she held a position with similar exertional requirements for approximately six months (Tr. 400-401). Plaintiff indicated that she also held jobs requiring 100-pound lifting; seasonal work as a mail sorter (50-pound lifting); and custodial work (30-pound lifting) (Tr. 401-402). She reported that she had ceased work on July 3, 2003 at the recommendation of her physician (Tr. 403).

Plaintiff, right-handed, stated that she could read and write (Tr. 403). She denied any income, indicating that she relied exclusively on her husband for financial support (Tr. 403). Plaintiff opined that arthritis, asthma, diabetes, depression, and anxiety precluded all full-time work (Tr. 404). She characterized her pain as "almost constant[]" adding that she experienced discomfort from her shoulders to her feet, requiring her to take Celebrex, Salicylate, Soma, Mobic, Flexeril, Neuronton, Plaquenil, over-the-counter pain medication, Glucophage, Glucotrol, and Actos (Tr. 404-405). Plaintiff stated that her pain medicine eased, but did not eliminate her pain, adding that she experienced the side effect of drowsiness (Tr. 414). She testified that she achieved partial relief by reclining after taking her pain medication (Tr. 414).

Plaintiff testified that in addition to taking medication for diabetes, she was required to follow a special diet (Tr. 405). Plaintiff added that she regularly took Singulair, Advair, and used an albuterol inhaler for asthma symptoms (Tr. 405). She admitted that despite experiencing asthma, she continued to smoke a half pack of cigarettes each day, adding that she had cut down from her previous daily consumption of a pack and a half (Tr. 406).

Plaintiff testified that she was diagnosed with depression in 2000, but had not

commenced therapy until April, 2006 following a suicide attempt (Tr. 406-407). She denied hobbies, church, or organizational activities, stating further that she seldom attended her children's school events (Tr. 409). She reported that she currently took Prozac and Elavil for depression (Tr. 407). Plaintiff also stated that she had sought emergency treatment once in the past year for back pain (Tr. 407). She testified that she continued to cook, do laundry, and shop for groceries, but denied vacuuming (Tr. 408). She reported occasional difficulty combing her hair and dressing due to swollen joints, but indicated that she could climb stairs, bend, and squat (Tr. 408-409, 415). She also alleged difficulty with fine manipulations such as opening jars, and cutting vegetables (Tr. 414). Plaintiff estimated that she could lift up to ten pounds, walk for a maximum of four blocks, and sit from between 30 minutes and an hour, adding that she required help lifting and carrying groceries (Tr. 410, 413). She reported that in the past year, she made trips both instate and to California (Tr. 411).

Plaintiff reported that on a typical day, she arose at 8:00 a.m., made breakfast, took her medication, napped once or twice for approximately 90 minutes, walked around the block, and sat in the house (Tr. 409-410, 413, 414). She testified that she generally retired at 10:00 p.m., but experienced sleep difficulties due to lower back and leg pain (Tr. 409, 413). Plaintiff opined that she was unable to hold even a sedentary position requiring only minimal interaction with the public, alleging that pain and drowsiness made her unemployable (Tr. 416). She also alleged that in the past two years she had become increasingly irritable and experienced concentrational problems (Tr. 416).

### B. Medical Records

## 1. Treating Sources

In April 2002, Plaintiff reported hand and foot swelling to rheumatologist Justus J. Fiechtner, M.D. (Tr. 187). Dr. Fiechtner diagnosed rheumatoid arthritis, prescribing Vioxx and Prednisone (Tr. 187). In May, 2002, Dr. Fiechtner, also noting a diagnosis of diabetes, cautioned Plaintiff to continue monitoring her blood sugar levels regularly (Tr. 183). The following month, Dr. Fiechtner noted peripheral edema in the lower extremities (Tr. 182). In August 2002, Plaintiff reported frequent urination and joint swelling (Tr. 113-114). In September 2002, Dr. Fiechtner noted that she exhibited "multiple tender points" consistent with fibromyalgia (Tr. 181). The next month, Dr. Fiechtner found that symptoms of rheumatoid arthritis were "under relatively good control" (Tr. 180). In December 2002, Plaintiff reported drowsiness as a side effect of Topamax (Tr. 178). Dr. Fiechtner recommended taking 15mg twice a day rather than 25mg once a day (Tr. 178). Also in December 2002, Plaintiff underwent pool therapy for back and joint problems (Tr. 125). Therapy notes show that she tolerated aquatic therapy well, but reported no improvement (Tr. 120). Treatment notes by Patricia Coleman-Miezan show that Plaintiff was again prescribed Prednisone in March 2003 for symptoms of inflammatory arthritis (Tr. 104). The same month, Richard S. Ferro, D.O., noting complaints of lower back pain and painful joints, recommended epidural injections (Tr. 130). Dr. Ferro found that "[o]ther options would include physical therapy re-evaluation or . . . behavioral and cognitive services" (Tr. 130). Examination records created the same month noted a previous shoulder surgery, indicating that Plaintiff currently demonstrated a normal range of motion and shoulder strength (Tr.

131).  Dr. Ferro administered epidural injections the same month and in April and May, 2003 without complications (Tr. 128).   In May 2003, Plaintiff reported continued shoulder, back and leg pain (Tr. 103).  In June 2003, an associate of Dr. Fiechtner observed edema in all extremities, noting that Dr. Coleman-Miezan had authorized a work release due to Plaintiff's inability to stand or lift for prolonged periods (Tr. 175).  July 2003, treatment notes indicate that despite experiencing asthma symptoms, Plaintiff continued to smoke (Tr. 101).   In September 2003, Dr. Coleman-Miezan noted that Plaintiff had not required emergency treatment or hospitalizations for asthma (Tr. 90).

Treating notes created in February  2004 indicate that Plaintiff reported depression and anxiety but denied thoughts of suicide (Tr. 278-281).   March  2004 treating notes indicate that Plaintiff was reminded to watch her sugar intake (Tr. 158).  In December 2004, an associate of Dr. Fiechtner again advised Plaintiff to control her sugar intake and quit smoking (Tr. 153).   In March 2005, Plaintiff sought urgent care after experiencing nausea and side pains (Tr. 361-362).  Treating notes from November 2005 note that Plaintiff was still depressed (Tr. 247).  In February 2006, Plaintiff complained of continued pain in her shoulders, hands, knees, ankles, and feet, reporting the same month that her husband had been hitting her (Tr. 192, 240).  The following month, Plaintiff again reported depression, requesting a prescription for Prozac (Tr. 238).

In April 2006, Dr. Fiechtner issued a medical source statement, finding that Plaintiff could lift a maximum of  less than 10 pounds on an occasional basis, stand or walk for less than two hours in an eight-hour workday, and sit for less than six hours with a moderately

limited ability to push and pull (Tr. 225).  Dr. Fiechtner opined that Plaintiff's limitations would "frequently" interrupt her ability to perform even a "low physical demands" job (Tr. 225).

### 2. Consultive and Non-Examining Sources

In February 2004, H.D. Jones, M.D., performed a consultive physical examination of Plaintiff on behalf of the SSA (Tr. 132-135).  Plaintiff reported that she was diagnosed with diabetes in 1998 (Tr. 132).  Plaintiff stated that despite experiencing arthritis and osteoarthritis, she had never had an MRI (Tr. 132).  She reported that injections for back, leg, and foot pain relieved her pain only temporarily (Tr. 132).  Dr. Jones' notes state that Plaintiff reported "some depressive symptomatology secondary to medical stressors [and] not having adequate health insurance," but denied "suicidal or psychotic ideation" (Tr. 133).  Dr. Jones, noting "extremely poor control" of Plaintiff's diabetes mellitus, encouraged her to keep her appointments and "consider going to an Emergency Room if she becomes actively more symptomatic" (Tr. 135).  He observed that Plaintiff's asthma was "relatively stable," noting that despite her respiratory condition she continued to smoke (Tr. 135).  Plaintiff exhibited a fully range of motion of the spine, shoulder, hip, knee, ankle, wrist, and hand/finger joints (Tr. 136-137).

A Physical Residual Functional Capacity Assessment performed the following month found that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand, sit, or walk for six hours in an eight-hour workday; and push/pull occasionally in the upper extremities and without limitation in the lower extremities (Tr. 141).  The Assessment

precluded Plaintiff from all ladder, rope, or scaffold climbing but found that she could climb ramps or stairs, and balance, stoop, kneel, crouch, and crawl on an occasional basis (Tr. 142). The Assessment found that Plaintiff was restricted to occasional reaching with the right hand, but could perform the remaining manipulative activities on a frequent (as opposed to constant) basis (Tr. 143). The Assessment found the absence of visual or communicative limitations, but determined that Plaintiff should avoid even moderate exposure to extreme cold and avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and machinery (Tr. 144). Plaintiff was precluded from working at heights (Tr. 144). The Assessment noted that Plaintiff continued to drive, prepare meals, do laundry, and shop, despite claims of memory loss and irritability (Tr. 145). The same month, a mental impairment development form was completed by a disability examiner in regard to Plaintiff's complaints of depression and memory problems (Tr. 139). A disability examiner concluded that Plaintiff's mental impairments did not create functional limitations on the basis that she had not pursued mental health treatment and had not reported memory problems to her treating sources (Tr. 139).

### C. VE Testimony

VE Steele, stating that her testimony was consistent with the Dictionary of Occupational Titles ("DOT"), classified Plaintiff's most recent past work as a cashier/stock clerk as unskilled at the medium exertional level; security screener, semiskilled/medium;

mail clerk, unskilled/heavy; and janitor, unskilled/medium[1] (Tr. 419). The ALJ then posed the following hypothetical question:

> "Assume a hypothetical individual who can meet the demands of light work, but should never use ladders, scaffolds, or ropes, should only occasionally use ramps or stairs, who should avoid moderate exposure to extreme cold, who should avoid concentrated exposure to extreme heat, humidity and vibrations, who should avoid concentrated exposure to fumes, odors, gases, and other respiratory irritants, who should do only occasional reaching and should avoid exosure to hazards including dangerous and unprotected machinery or working at unprotected heights. Could such an individual do Claimant's past relevant work?"

(Tr. 419-420). The VE found that based on the hypothetical limitations, Plaintiff was unable to return to any of her past relevant work but could perform the unskilled, light work of a general clerical worker (11,200 jobs in the lower peninsula of Michigan), gate guard (10,700), cafeteria attendant (3,880), and cashier (28,000). The ALJ then amended his hypothetical limitations:

> "no job requiring the individual to produce a specific number of pieces per hour or that could have a down-line or up-line dependent coworker, and should only have simple, unskilled work with an SVP rating of 1 or 2"

(Tr. 420-421). The VE testified that given the additional limitations, the general office clerk positions would be eliminated and the gate guard positions would be reduced to 2,500 (Tr. 421). She testified that the cafeteria attendant and cashier numbers would be unchanged (Tr.

---

[1]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

421).  The VE stated that in addition to the DOT, she had drawn her job numbers from the Department of Census and the Michigan Occupational Employment Statistics Manual (Tr. 422).  She found that if Plaintiff's testimony regarding her limitations was fully credited, she would be precluded from all full-time work (Tr. 422).

### D.  The ALJ's Decision

Citing Plaintiff's medical records, ALJ Blair found that although Plaintiff experienced the severe impairments of arthritis, diabetes, asthma, obesity, and depression, none met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No.4 (Tr. 19-20).  The ALJ found that Plaintiff retained the  Residual Functional Capacity ("RFC"):

> "to lift or carry a maximum of 20 pounds occasionally and 10 pounds frequently.  In an eight-hour workday, the claimant can stand or walk for six hours and sit for six hours.  She should never use ladders, scaffolds or ropes. [She] should only occasionally use ramps or stairs, stoop, crouch, kneel or crawl.  She should avoid concentrated exposure to extreme heat, humidity or vibrations. [S]he should avoid even moderate exposure to extreme cold.  She should only occasionally reach. [She] should avoid concentrated exposure to hazards including dangerous/unprotected machinery or work at unprotected heights.  The claimant can only do simple unskilled work with a . . . SVP rating of 1 or 2"

(Tr. 21).  Adopting the VE's numbers, the ALJ found that although Plaintiff could not perform her past relevant work, she retained the capacity for unskilled light work including positions as a gate guard, cafeteria line attendant, and cashier (Tr. 22).

The ALJ supported his determination by noting that Plaintiff's testimony was "not entirely credible," finding that her claim that her diabetes could not be controlled by medications stood at odds with treating records showing that her diabetes is not

controlled "due to non-compliance" (Tr. 22).  The ALJ cited consultive examination notes showing that despite experiencing arthritis, Plaintiff demonstrated a normal range of motion of the neck, back, shoulders, elbows, wrists, hands, hips, knees, ankles, and feet (Tr. 22 *citing* 137-138).  Finally, the ALJ noted Plaintiff had failed to follow her treating physicians' advice to quick smoking and lose weight (Tr. 23).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and  "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,*  800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight."  *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the

record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

**FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

**ANALYSIS**

Plaintiff makes multiple arguments in favor of remand for either an award of benefits or further fact-finding. First, citing *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987), she argues that the hypothetical question

posed by the ALJ at the hearing did not account for her true degree of limitation, thus invalidating the VE's job findings. *Plaintiff's Brief, Docket* #7-10. Next, she argues that the ALJ's finding that she was only partially credible was both procedurally and substantively inadequate, contending her allegations of disability were well supported by the record. *Id.* at 11-13. Last, Plaintiff argues that the ALJ erred in discounting Dr. Fiechtner's April, 2006 finding that she was unable to perform even sedentary work. *Id.* at 13-18.

The hypothetical question's validity hinges on the ALJ's credibility determination and treating physician analysis. Therefore, the Court will address Plaintiff's latter arguments first.

### A. Credibility

### 1. Basic Principles

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case

record." C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

As a general rule, an ALJ's credibility determination is entitled to deference. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

## 2. **The Present Case**

Superficially, it would appear that the ALJ made a procedurally adequate credibility determination, citing Plaintiff's daily activities to support his conclusion that her statements "concerning the intensity, persistence and limiting effects" of her conditions was "not entirely credible" (Tr. 22). In the narrow sense, substantial evidence, drawn from the record before him, supports the credibility determination. However, his findings are at least partially invalidated by the scant evidence regarding Plaintiff's psychological impairments.

Plaintiff did not include depression among her impairments when applying for benefits in September, 2003 (Tr. 61). Despite treating records indicating that Plaintiff

experienced symptoms of depression (Tr. 278-281) in March, 2004, an SSA disability examiner determined that Plaintiff's mental impairments did not create functional limitations (Tr. 139). As a result, she received neither a consultive psychological examination nor non-examining mental evaluations (Psychiatric Review Technique Form ("PRTF"), Mental Residual Functional Capacity Assessment).

However, subsequent treating records show that Plaintiff continued to experience depression and spousal abuse (Tr. 247, 238, 240). Plaintiff testified at the hearing that she had been diagnosed with depression and had recently received emergency treatment following a suicide attempt (406-407). The ALJ reasonably determined at Step Two of his analysis that Plaintiff experienced depression (Tr. 19). As required by 20 C.F.R. 404.1520a (e)(2), the ALJ also made a finding of Plaintiff's impairments regarding daily activities, social functioning, concentrational abilities, and episodes of decompensation [2] (Tr. 20-21).

So far, so good. However, when confronted with Plaintiff's testimony regarding depression and a recent suicide attempt, the ALJ erred in failing to either consult a mental health expert or require a mental evaluation before issuing his decision. The Eighth Circuit has held that the failure to consult a mental expert despite evidence of the claimant's suicide attempt constitutes reversible error:

"'[I]n any case where there is evidence which indicates the existence of a

_____

[2]"When a record contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly." *Andrade v. Secretary of Health and Human Services,* 985 F.2d 1045, 1048 (10th Cir.1993)(internal citations omitted); 20 C.F.R. § 404.1520a.

mental impairment,' an administrative law judge may *not* make an initial determination that the claimant is not disabled unless the administrative law judge 'has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.'"

*Montgomery v. Shalala,* 30 F.3d 98, 101 (8th Cir. 1994)(*citing* 42 U.S.C. § 421(h)).[3]

Despite the absence of an evaluation by a mental health care professional, ALJ Blair proceeded with his own evaluation of Plaintiff's mental impairments, attributing her mental health problems to being overweight:

"Obesity may . . . cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea . . . . The effects of obesity may not be obvious. For example . . . . some people with obesity also have sleep apnea. this can lead to drowsiness and lack of mental clarity during the day. Obesity may also affect an individual's social functioning."

(Tr. 21). However, the ALJ failed to cite any record source material to support his conclusion that Plaintiff's depression was the result of obesity. Further, the dearth of evidence supporting this finding casts doubt upon the accompanying conclusion that Plaintiff's daily living and social limitations as a result of depression were *mild,* and that her concentrational abilities were *moderately* impaired by depression. Further, I disagree with

_____

[3]The Sixth Circuit has concluded that the "obligation [to consult] would arise only 'if the claimant brings forth sufficient evidence to raise an inference that he suffers from a mental impairment.'" *Marcum v. Commissioner, Social Security Admin.,* 2000 WL 92262, 4 (C.A.6 (Ky. (C.A.6 (Ky.),2000) (*citing Owen v. Chater, Comm'r of Soc. Sec.,* No. 96-5571, 1997 WL 251918, *4 (6th Cir. 1997)). Here, the ALJ has acknowledged such evidence, finding at Step Two that Plaintiff experienced depression (Tr. 19).

the ALJ's conclusion that Plaintiff's claim of depression was  undermined by her failure to seek treatment until one month before the hearing.  Plaintiff's medical records indicate that she had already been prescribed Prozac two years prior the hearing (Tr. 238).  Further, her decision to enter therapy one month before the hearing was logically precipitated by her March, 2006 suicide attempt rather than an attempt to create a psychiatric record to support her disability claim.  Finally, while the ALJ apparently relied on the March, 2004 examiner's conclusion that Plaintiff did not experience significant mental impairments, Plaintiff's more recent records clearly contradict the examiner's finding (Tr. 192, 238, 240, 247, 406-407).  While the ALJ's reliance on the March, 2004 finding is not intrinsically improper,  newer material suggesting substantial mental limitations requires a consultive examination.  *See Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill. 2004)(finding error in the ALJ's use of "outdated and inadequate" evidence).  *See also Rivera v. Barnhart,* 379 F.Supp.2d 599, 607 (S.D.N.Y., 2005)(remand ordered based on the need for more recent information for the "clarification of discrepancies" between older records by both treating and state-hired physicians);*Olheiser v. Apfel,* 2000 WL 33340310, *4 (D.N.D. 2000) (criticizing the ALJ's almost exclusive reliance on outdated records).  Likewise here, the lack of adequate information regarding Plaintiff's emotional limitations requires a remand for a psychological evaluation.

### B.  The Treating Physician Analysis

Plaintiff also argues that the ALJ failed to support his rejection of Dr. Fiechtner's April, 2006 disability opinion.  *Plaintiff's Brief* at 13-18.  She contends that the ALJ flouted

the requirements of 20 C.F.R. § 404.1527(d)(2) by failing to "give good reasons" for rejecting the rheumatologist's assessment. *Id.*

The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, he must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)).

The ALJ's reasons for rejecting Dr. Fiechtner's opinion are stated in their entirety:

> "As for the opinion evidence, in April, 2006 Dr. Fiechtner gave the claimant less than sedentary work limitations. The undersigned finds this opinion is not supported by Dr. fiechtner's reports or consistent with the record as a whole. The claimant reported a wide range of daily activities. Therefore, the undersigned rejects this opinion"

(Tr. 22).

In all fairness to the ALJ, he arguably applied *Wilson* earlier in his opinion by discussing Dr. Fiechtner's specialization, as well as the length and frequency of treatment (Tr. 20). However, the ALJ's conclusion that Plaintiff's daily activities stand at odds with Dr. Fiechtner's finding that she was unable to lift even ten pounds reflects an erroneous reading of the record. In fact, Plaintiff's stated activities support, rather than contradict Dr.

Fiechtner's opinion. Plaintiff reported difficulty lifting pots and pans (Tr. 79). She also stated that she was unable to perform laundry chores or grocery shop without help lifting (Tr. 81, 412). Likewise, her testimony that she continued to groom herself (with difficulty) and pick up papers from her yard does not contradict the treating physician's assessment (Tr. 408). Because the ALJ failed to "give good reasons" for rejecting the treating physician's opinion as required by 20 C.F.R. § 404.1527(d)(2)), a remand is appropriate.

### C. The Hypothetical Question

Finally, Plaintiff argues that the hypothetical question did not encompass all of her limitations. *Plaintiff's Brief* at 7-10.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). *See also Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004)(Although an ALJ is not required to list all of a claimant's conditions verbatim, the hypothetical question should account for her full degree of limitation.)

Standing alone, the ALJ's hypothetical question, at least in part, addresses her physical and mental limitations. However, as discussed in Section **A**., the absence of a mental assessment allows for the possibility that the ALJ's hypothetical restriction of "simple, unskilled" work does not fully account for her degree of psychological limitation. Further, the hypothetical question's inclusion of the ability to perform *light* work (based on a faulty rejection of Plaintiff's treating physician's opinion) invalidates

the ALJ's conclusion that she could perform the exertionally light work of a gate guard, cafeteria line attendant and cashier (Tr. 24). *Varley,* 820 F.2d at 779.

In closing, I note that the errors in the administrative decision, while critical, do not suggest that Plaintiff is automatically entitled to benefits. Upon considering the results of psychological examination, the ALJ may find that substantial evidence supports a finding that Plaintiff is capable of a narrower range gainful employment. Likewise, because the case for benefits is not overwhelming, upon remand the ALJ should be permitted to augment, clarify, and/or reconsider his reasons for rejecting Dr. Fiechtner's opinion. Pursuant to *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) this case should be remanded for further proceedings consistent with Sections **A-C**. of the analysis.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be DENIED and Plaintiff's Motion for Summary Judgment GRANTED, remanding this case to the administrative level for further fact-finding and analysis.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947

(6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: October 22, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on October 22, 2008.


S/Gina Wilson
Judicial Assistant